■ EASTMAN KODAK COMPANY, Respondent, v GAF CORPORATION, Appellant.—Motion to strike Appendix A of defendant's reply brief granted. Order unanimously modified, and, as modified, affirmed, without costs, in accordance with the following memorandum: Plaintiff sues defendant in contract to recover royalties allegedly due pursuant to several licensing agreements permitting use of various products and processes owned and patented by plaintiff. Relevant to this appeal are two affirmative defenses dismissed by Special Term. The first affirmative defense alleges that the patent license agreements are unenforceable because of plaintiff's monopolization of relevant markets in the photographic industry contrary to Federal antitrust laws, a claim which is the subject of a pending antitrust action in Federal court. The fourth affirmative defense alleges patent invalidity. Special Term properly dismissed the first affirmative defense. The alleged antitrust violations are not inherent in the licensing agreements but only collateral to them. That being so, they may not be asserted as a defense to the contract action (see *Kelly v Kosuga,* 358 US 516; *New York Stock Exch. v Goodbody & Co.,* 42 AD2d 556; *Western Elec. Co. v Solitron Devices,* 1967 Trade Cases [CCH] par 72,057 [Supreme Ct, NY County, 1967], affd 28 AD2d 1211; cf. *Continental Wall Paper Co. v Voight Sons Co.,* 212 US 227). Cases to the contrary cited by defendant are cases in which the contract itself was the basis for an arrangement which violated the antitrust laws. In this case, plaintiff's alleged antitrust violation is not the product of the licensing agreement but rather of plaintiff's domination of the photographic industry and its alleged misuse of patents. Special Term erred, however, in dismissing the fourth affirmative defense because assuming the factual allegations of the pleading to be true, as we must, patent invalidity is a valid defense to a State court contract action (CPLR 3211; *Lear, Inc. v Adkins,* 395 US 653; see, also, McCarthy, "Unmuzzling" the Patent Licensee: Chaos in the Wake of Lear v. Adkins, 45 Geo Wash L Rev 429). In dismissing, Special Term went beyond the pleadings and, in effect, granted summary judgment because the defense was "untimely". In *Lear* the Supreme Court held that a patent licensee is relieved from paying royalties after the date on which the patents, subject of his license, are successfully challenged. Licensees are encouraged to challenge patentability because of public policy favoring the free flow of ideas and information. The exemption from royalty payments, however, accrues only from the date the patents are challenged, and the issue here is when defendant did so. The several licensing agreements sued upon were executed at various times before 1968 and defendant has failed to pay any royalty since 1972-1973. Nonpayment is an equivocal act which does not necessarily result in an assertion of patent invalidity (see *PPG*

*Inds. v Westwood Chem.,* 530 F2d 700, cert den 429 US 824), and as Special Term correctly observed, standing alone it is not sufficient to constitute a legal challenge. Special Term found, as a matter of law, that no challenge was interposed until the defendant's answer was served and it therefore dismissed the defense, holding that it was not available. Plaintiff's complaint seeks "all royalties due and owing plaintiff under the * * * license agreements", a sum which includes (by permissible amendment [see CPLR 3025, subd (c); *Rosen v Goldberg,* 28 AD2d 1051, affd 23 NY2d 791]) royalties to the date of judgment. Therefore defendant has stated a valid defense at least as to those royalties accruing after its answer. Further than that, however, there is an issue of fact concerning whether a challenge was made prior to answer. A challenge occurs when the licensee takes an unequivocal position on the validity of the patent sufficient to encourage an early adjudication of the matter *(PPG Inds. v Westwood Chem., supra,* pp 706-708; 45 Geo Wash L Rev, p 440). That question is not directly addressed in the parties' supporting papers but there is evidence from which it might be found that defendant, acting through its Director of Patents, repudiated the patents as early as February 6, 1973, that defendant thereafter terminated royalty payments and in April, 1973 it instituted its antitrust action in Federal court. Although the allegations of the antitrust complaint refer essentially to patent misuse rather than patent validity and standing alone might not constitute a "challenge", nevertheless, defendant's conduct as a whole, when considered with its actions, may have been sufficiently clear to "encourage" an early adjudication of patentability. The record raises issues of fact for trial as to the fourth affirmative defense and it should not have been dismissed. (Appeal from order of Monroe Supreme Court—dismiss affirmative defenses.) Present—Simons, J. P., Hancock, Jr., Callahan, Doerr and Moule, JJ.